Ruffin, C. J.
 

 The plaintiff was entitled to a negro man slave, aged 38 years, in remainder after the death of his mother, who was a healthy woman, aged about 70 years, and resident of Surry county, and, being so entitled, he conveyed the slave tq the defendant by a deed, bearing date March 20th, 1834, and absolute in its terms, for the consideration of
 
 *563
 
 $150, and at the same time his mother gave the defendant her promise in writing, that the defendant should, upon the same consideration, have the services of the slave from the 1st day of August to the 25th of December, in each year during her life. Accordingly, until the 1st day of August of the year 1834, Mrs. Franklin kept the slave, and then he went into the possession of the defendant,- and so remained until Christmas, when he again returned to Mrs. Franklin. During the next Spring, the health of Mrs. Franklin began to decline, and she died in July following, viz: 1835, and then the defendant took possession of the slave, claiming him as his own. This bill was filed in March 1839, and the object of it is, to obtain a redemption and re-conveyance of the slave, upon the ground, that the contract was not one of sale and purchase, but that the defendant in fact lent the plaintiff the sum of $150, and took the conveyances as a security therefor.
 

 The bill charges, that the plaintiff needed money and sought a loan of $150 from the defendant, and offered to secure it by a conveyance of the slave, who was worth $600, and that the defendant agreed thereto, if the plaintiff’s mother would let the defendant have the negro for fiye months in the year, to keep down the interest until the money should be returned, and that his mother, with the view to to .relieve the plaintiff’s necessities, was prevailed on to give her assent thereto. And the bill charges, that the deed and agreement aforesaid, although .unconditional in their terms, were executed upon-the express agreement for the redemption of the slave upon payment of the principal money within ten years thereafter, and the extinguishment of the interest by the labor of the slave from-year to year as aforesaid, the value of which labor greatly exceeded the interest. The answer denies, that the'plaintiff ever applied to the defendant to borrow money, or that he lent him any, or that there was an agreement for the redemption of the slave under any circumstances. And it states, that about the first of March 1834, the plaintiff proposed to sell to the defendant his interest in the slave at the price of $100 : That the defendant declined
 
 *564
 
 the proposal, upon the grounds of the risk of the negro’s death before that of Mrs. Franklin, who was a woman ofro-bust constitution, in good health, and residing in a salubrious region, and, if he should eversurvive her, that he might come into possession at so distant a day, and when so far gone in the decline of life, as not to be then worth the price and intermediate interest thereon, and he so stated to the plaintiff: That a few days thereafter, the plaintiff renewed his proposal, and the defendant again declined purchasing a contingent interest, so remote and precarious. But at the same time he informed the defendant, that he was willing to purchase the entire property in the negro, if he and his mother would take a reasonable price, or, if she would not sell out entirely, that defendant would give $>150 for the plaintiff’s remainder, and the services of the negro for each year during her life after crop time, if Mrs. Franklin should, upon conference with her, assent thereto. The answer states further, that the plaintiff then appointed to the defendant a day to come to his mother’s to learn her mind and conclude their negotiation in one way or the other: That the plaintiff fully understood the defendant’s proposal, and that, on the appointed day, the defendant attended at Mrs. Franklin’s, and was then informed by the plaintiff and his mother, that they agreed to the sale upon the terms offered by the defendant : That the defendant then explained the contract distinctly to Mrs. Franklin, for fear she ¿might become dissatisfied afterwards, and reminded her that the constant services of the slave might be necessary to her; but, that, with the view of aiding her son, she persisted in her assent to the sale, as the defendant would not get the negro until after he had completed the working of her crop: Upon which, the bargain was completed, the purchase money in part paid and the residue secured, and the deed executed, as an absolute and unconditional conveyance, and without any agreement, understanding or intention on the part of any person, that the plaintiff should have a right to redeem, and nosuch pre-tence was ever set up by the plaintiff, until the death of his mother, at an earlier day than had been anticipated, suggested to him the thought.
 

 
 *565
 
 The answer states the whole value of the negro not to ex-ceod $400, and that, considering the ages and health of Mrs. Franklin and the negro respectively, the remainder after her life estate was not worth more than $100. The parties proceeded to take proofs ; of which but a small portion is of any weight. The file is loaded with numerous, badly taken, and unsatisfactory depositions to the character of witnesses, whose testimony in the case is itself of little or no consequence. The material evidence relates to the value of the respective interests in the slave, and the terms of the treaty between the parties, as understood by the witnesses. Upon the former point there is a difference of opinion among the witnesses, and it is not wonderful that there should be, as it is not an easy matter to compute the value of a male slave at the meridian of life,who is not to fall into possession until the death of another healthy, though aged person. A few years and a slight accident might make the negro chargeable instead of valuable, and there are many persons of small capital, and others who need present labor, who would not purchase such an interest at all, or only at a very low price.
 

 Hence a remainder of the kind is seldom the subject of traffic, unless the vendor be very needy, and, therefore, a sale of it should be viewed with suspicion, and relieved against, if advantage be taken of one’s necessities by buying, at a great under value. .But in this case the prepondeiance of the evidence as to the value supports the statements of the answer, as a large number of witnesses depose that they would not have given more than $100 for the remainder, and but one says he would. Besides, this bill does not seek to be relieved against this contract as a hard and un-conscientious bargain fo.r a remainder, which the owner’s distresses obliged him to sell, but it seeks redemption as upon a pledge or mortgage, or an agreement for .the same, which, notwithstanding the form of the conveyance, the bill alleges was positively stipulated for, and the bill is framed with that view only. In such a case inadequacy between the sum advanced and the real valuó of the thing conveyed, is a circumstance, which, with .others., furnishes evidence of
 
 *566
 
 the true agreement, whether for an absolute purchase, or for a security. The
 
 onus
 
 is on the party who seeks to redeem, anc*’ as ^aS keen °^en sa^> w^en ^le conveyance is absolute, and the answer, without evasion, plainly denies the agreement for redemption, the proof for the plaintiff must be clear, consistent and cogent, composed of circumstances incompatible with the idea of an absolute purchase, and leaving no doubt on the mind. Inadequacy of price by itself cannot have that effect, if it were established in this case, for there are many real sales at an under value. Besides, it only furnishes an argument against the deed, as constituting an absolute purchase, and must yield to direct proof of the intentions of the parties by persons cognizant of the treaty. In this case there is a mass of such direct proof. It comes from three persons, who heard the first proposals at the defendant’s house, and from two others, who were present at the final bargain, and are subscribing witnesses to the deed. All these depose directly, that the whole dealing was for a sale, that at no time was a loan or pledge spoken of; that the defendant declined buying the reversion by itself, at $100, because he would not deal for a pure contingency, but wanted something sure, as stated in the answer. Besides those witnesses, four others say that the plaintiff, when he applied to the defendant for a redemption, admitted that there was no agreement for it, but said that, as his mother had died so soon, he thought the defendant ought either to let him have the negro back, or pay him a further price.— Against this evidence the plaintiff offers little, save the opinion of some persons, that the interests purchased by the defendant were worth somewhat more than he gave. But upon that the court could not declare it was not an absolute purchase, but must declare that .it was, and so dismiss the bill, but, as the plaintiff was allowed to sue in
 
 forma pau-peris,
 
 without costs.
 

 .Ter Curiam. Bill dismissed without costs.